IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KYLE SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1000-RP |
| | § | |
| FLEETCOR TECHNOLOGIES | § | |
| OPERATING COMPANY, L.L.C. and | § | |
| FLEETCOR TECHNOLOGIES, INC., | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants FleetCor Technologies Operating Company, L.L.C. and FleetCor Technologies, Inc.'s (collectively, "FleetCor") Motion for Reconsideration, (Dkt. 29), and Plaintiff Kyle Smith's ("Smith") response, (Dkt. 31). Having considered the motion and the responsive filing, the Court finds that the motion should be denied.

**I. BACKGROUND**

FleetCor filed a motion for summary judgment, (Mot. Summ. J., Dkt. 28), which this Court granted in part and denied in part,[1] (Order, Dkt. 28). FleetCor then filed the instant motion, seeking reconsideration of this Court's order, "particularly with respect to the burden of proof applied to [Smith's] ADEA discrimination claim."[2] (Mot., Dkt. 29, at 1). According to FleetCor, the Court applied the "motivating factor standard" instead of the "but for standard" and, under the but for

---

[1] The Court held that FleetCor was entitled to summary judgment on Smith's ADEA and TCHRA retaliation claims but was not entitled to summary judgment on Smith's ADEA and TCHRA claims of age discrimination. (Order, Dkt. 28, at 15).

[2] FleetCor, in a footnote, also asks the Court's "indulgence in reconsidering its ruling on the TCHRA age claim." (Mot., Dkt. 29-2, at 3). Because the Court finds that Smith has produced sufficient evidence to create a genuine issue of material fact under the ADEA's "but for" standard, the Court does not find that he failed to produce sufficient evidence to create a genuine issue of material fact under the TCHRA's less burdensome "motivating factor" standard.

standard, Smith would fall short of showing that he would not have been terminated but for his age. (*Id.* at 1–2, Dkt. 29-2, at 10). Smith disagrees about the standard applied by the Court and argues that, in any event, Smith met the but for standard. (Resp., Dkt. 31, at 2).

## II. LEGAL STANDARD

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). American Title asserts its motion under Rule 54(b). "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to revise at any time any order or other decision that does not end the action." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 54(b)). "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). "Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'" *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

## III. DISCUSSION

At the outset, the Court clarifies that it relied on and applied the but for standard, set forth by the Supreme Court in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), to Smith's ADEA claim. (*See* Resp., Dkt. 31, at 2–3) (noting the many instances in which the Court applied the but for

standard). FleetCor insists, however, that the but for standard means that Smith must come forward with "**substantial** evidence that his age was the **sole** reason for his termination." (Mot., Dkt. 29-2, at 3). The Court disagrees. The Fifth Circuit has explained that "'but-for cause' does not mean 'sole cause.'" *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citing Black's Law Dictionary 250 (9th ed. 2009) (defining "but-for cause" as "[t]he cause without which the event could not have occurred—[a]lso termed actual cause; cause in fact; factual cause" and defining "sole cause," in relevant part, as "[t]he only cause that, from a legal viewpoint, produces an event or injury")). This Court proceeds using the standard it applied in its original Order: whether Smith's employment was terminated because of his age.

In its motion for reconsideration, FleetCor argues that Smith failed to meet the heightened showing of pretext. First, on the issue of disparate treatment, FleetCor claims that Smith "and hence the Court in the Order" did not cite to any evidence showing that Smith's and his coworker Matthew Thomason's expense policy violations were "'nearly identical' in length, volume, and degree." (Mot., Dkt. 29-2, at 3) (citing *Perez v. Texas Dep't of Crim. Just., Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004)). FleetCor imposes a meaning on nearly identical that seems to remove "nearly" from the phrase, and FleetCor offers no support for its notion that Smith was required to show that his expense report violations were nearly identical to his coworker's specifically in length, volume, and degree.[3]

Second, FleetCor takes issue with the Court's discussion of FleetCor's progressive discipline policy, contending that failing to follow its nonmandatory policy cannot establish pretext. FleetCor points to two deposition excerpts to show that its policy was nonmandatory: page 82 of John Molnar's ("Molnar") deposition transcript and page 95 of Crystal Williams's ("Williams") deposition transcript. (Mot., Dkt. 29-2, at 4). Although the parties both attached excerpts of Molnar's

---

[3] Perhaps Smith made that showing, but the Court will not hold Smith to a new, unsupported requirement.

3

deposition to the original motion for summary judgment and response brief, they did not include page 82. The Court therefore does not have that evidence before it.

The Court can review the page of Williams's deposition as FleetCor attached it to their Motion for Reconsideration. (Dkt. 29-1, at 1–2). After reviewing that page, it appears that Williams was deposed about FleetCor's progressive discipline policy. Williams stated said that FleetCor had a policy that outlined the steps to be followed. (*Id.* at 2). She explained that if a violation was "egregious enough," FleetCor could skip steps and terminate someone "on the spot." (*Id.*). Then she said that FleetCor could skip steps "as we deem necessary." (*Id.*). Williams did not say that the policy was not mandatory. Rather, she said that the policy allowed exceptions.

The existence of exceptions within the policy does not render it nonmandatory because someone would invariably still need to review the policy, read that certain provisions of it allow an exception to be made, and decide that the policy allowed an exception to be made with respect to the specific misconduct at issue. Following those steps under the policy is still following the policy. In any event, even if FleetCor's policy was nonmandatory, FleetCor admits that a nonmandatory policy can raise a material fact of pretext if there is evidence that the policy was applied differently to similarly situated employees but claims that Smith "offered no evidence that FleetCor's administration of its non-mandatory progressive discipline policy was discriminatory." (Mot., Dkt. 29-2, at 4–5). However, Smith did come forward with evidence that FleetCor gave Thomason, who was 29, "multiple reminders and warnings about his [expense report] delinquencies." (Resp. Mot. Summ. J., Dkt. 22, at 7).

Third, FleetCor argues that the Court erred in finding that Smith presented enough evidence to create a fact issue regarding whether FleetCor wanted to replace older employees with younger ones. FleetCor takes issue with the Court's analysis of Smith's supervisor's age-based comments and FleetCor's hiring practices. According to Smith, he and Molnar, who was his supervisor, discussed

"how the organization was getting younger" and that Smith was being "treated differently than some of those younger people [and] held to a different standard than . . . younger colleagues, [and] subjected to treatment that . . . younger colleagues were not being subjected to." (Smith Depo., Dkt. 23-2, at 19). Smith cited to Molnar what he saw as evidence that FleetCor was "get[ting] rid of older employees" in favor of "these new faces and they are all younger, inexperienced salespeople." (*Id.* at 20). Molnar allegedly responded, "Look, I recognize it." (*Id.* at 21). In addition, in a conversation with Smith, Molnar referred to those new employees as "young bucks." (*Id.* at 25).

FleetCor contends that those conversations and Molnar's comments do not show that FleetCor desired to replace older employees with young ones and do not amount to "specific evidence that older applicants who were equally qualified were rejected in favor of younger applicants." (Mot., Dkt. 29-2, at 5). FleetCor fails to support its assertion with a citation or any legal support. FleetCor also insists that the "young bucks" comment was a stray remark that should be disregarded. (Mot., Dkt. 29-2, at 5). It was not. Smith has not relied solely on a lone comment; rather, the evidence of that remark, which was made by the decisionmaker, was accompanied by other evidence indicative of discriminatory animus. Overall, FleetCor seems to misunderstand the Court's task and its conclusion. The issue before the Court was not whether Smith had proven discriminatory hiring practices but instead was whether, after drawing all justifiable inferences in Smith's favor, a reasonable jury could conclude that FleetCor was not being truthful about some of its stated reasons for terminating Smith and therefore FleetCor was not entitled to summary judgment. The Court concluded that Smith had presented sufficient evidence of age-related comments made by a supervisor to show pretext and discriminatory motive and preclude summary judgment in FleetCor's favor.

FleetCor next argues that its proffered reasons for termination remain undisputed: the audit results, Smith's failure to follow the travel and expense policy, Smith's unsatisfactory audit

submissions, and Smith's coworkers calling him belligerent. (Mot., Dkt. 29-2, at 5–8). As the Court set out in its Order, "Smith does not dispute that FleetCor has articulated a neutral, nondiscriminatory reason for terminating his employment." (Order, Dkt. 28. at 5). The Court addressed in its Order, and here, Smith's claims of pretext with respect to FleetCor's proffered reasons. For the sake of being comprehensive, the Court will again consider whether a reasonable jury might infer that FleetCor's reasons for Smith's termination were untrue.[4]

In its motion, FleetCor focuses on Smith's coworkers' comments and complaints about Smith. FleetCor specifically raises these alleged comments by coworkers: David Strider's ("Strider") complaint to Molnar that Smith referred to Strider's reports as "incompetent," Jody Terakawa's "reported difficulties working with Plaintiff," and Thomason's deposition testimony that he found Smith to be "overreaching" and "ridiculous" at times, "could see where other people . . . might have found [Plaintiff] unappetizing," and "was certainly the most demanding" of the a particular team. (Mot., Dkt. 29-2, at 6–7).

At the outset, the Court notes that FleetCor now presents some of that evidence in a possibly misleading context. For example, when Smith discovered that FleetCor had made a mistake with a customer that potentially violated the customer's contract, he talked to Strider about reporting the mistake to FleetCor's legal department. (Smith Depo., Dkt. 23-1, at 12–13). After that conversation, Smith testified that *Smith* told Molnar that Strider had "screamed" at him, "Are you calling my team incompetent?" (*Id.* at 13). FleetCor, perhaps unintentionally, states that Strider "reported to Molnar that [Smith] referred to Strider's employees as 'incompetent.'" (Mot., Dkt. 29-2, at 6). Even assuming that Smith's coworkers complained to Molnar about Smith at other times, as the Court explained in its Order:

---

[4] To the extent FleetCor believes the Court relied on a factual issue that was not proffered by FleetCor as a reason for Smith's termination, the Court clarifies that it did not rely on those factual issues to reach its conclusion that FleetCor cannot be granted summary judgment. (*See* Mot., Dkt. 29-2, at 8–9).

> Smith cites to evidence that he had no disciplinary history, (Smith Depo., Dkt. 23-2, at 47; Williams Depo., Dkt. 21-14, at 32). Smith testified that he had no personality conflicts with anyone and had great relationships overall, despite some natural friction with the vendor enrollment team, (Smith Depo., Dkt. 23-2, at 14–16, 33–34). Smith corroborates his testimony with the deposition of Thomason who testified that it was understandable that there might have been friction between Smith and other teams because of the nature of Smith's accounts. (Thomason Depo., Dkt. 23-5, at 7–8, 23–24). Thomason explained that Smith's work was "nonstandard[,] so you couldn't just hand it over to the implementation team and -- and let them run with it." (*Id.* at 7). FleetCor argues that Smith's denials of any problems with his work relationships is not sufficient to raise a genuine fact issue. (Reply Mot. Summ. J., Dkt. 25, at 3). While it is true that an "employee's subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment," *Raina v. Veneman*, 152 F. App'x 348, 350 (5th Cir. 2005), Smith's belief does not stand alone. The observations and conclusions of at least one of his coworkers and the lack of disciplinary action against him over a long career support his position that there were no behavioral issues. (*See* Thomason Depo., Dkt. 23-5, at 7–8; Williams Depo., Dkt. 21-14, at 32).

(Order, Dkt. 28, at 7–8). Nothing in FleetCor's motion persuades the Court to reach a different conclusion upon reconsideration that a reasonable jury might infer that FleetCor's reasons for Smith's termination were untrue.

FleetCor also disagrees with the Court's conclusion regarding FleetCor's claim that Smith was terminated for failing to cooperate with the audit was pretext. FleetCor suggests that the Court second guessed FleetCor's assessment of Smith's audit results. (Mot., Dkt. 29-2). In its motion for summary judgment, FleetCor explained that it had lost trust in Smith "based on his failure to submit expense reports for over 15 months, the unsatisfactory nature of what he finally submitted, [and] his perceived disregard of policy in the decision-markers' minds." (Mot. Summ. J., Dkt. 21-2, at 9). In its Order on FleetCor's motion for summary judgment, the Court noted that Smith testified he complied with every deadline and submitted his receipts in an organized fashion. (Order, Dkt. 28, at 8). FleetCor takes issue with the Court's "reference to a factual issue of whether [Smith] submitted his receipts in a shoebox, but FleetCor did not proffer this as a reason for termination." (Mot., Dkt. 29-2, at 9). FleetCor has that wrong. FleetCor stated that Smith was terminated, in part, because of the "unsatisfactory nature of what [he] submitted." (Mot. Summ. J., Dkt. 21-2, at 9). Regarding

Smith's failure to submit expense reports and perceived disregard of policy, Smith presented substantial evidence that Thomason, who also was a salesperson and who also was supervised by Molnar—but was 29 years old—violated the expense report policy during the same time frame with multi-month delinquencies that resulted in the deactivation of his expense card. (Resp. Mot. Summ. J., Dkt. 22, at 9–11). Yet, Molnar allegedly promoted Thomason and terminated Smith. (*Id.* at 10). The difference in the way FleetCor treated Smith and Thomason, two similarly-situated employees who committed nearly identical misconduct, is evidence of pretext. (*See* Order, Dkt. 28, at 6–7). In sum, nothing FleetCor raises in its Motion for Reconsideration persuades the Court to alter its ruling.

## IV. CONCLUSION

For these reasons, FleetCor's Motion for Reconsideration, (Dkt. 29), is **DENIED**.

**SIGNED** on March 17, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE